IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATEBORO DIVISION

| | | |
|---|---|---|
| Robert Timothy Clements | ) | |
| on behalf of himself and as parent | ) | |
| and natural guardian of | ) | CIVIL ACTION FILE NO. |
| Ryan Lucas Clements, a minor | ) | |
| and, Breanna Rain Clements, a minor | ) | |
| | ) | |
| Plaintiff, | ) | **CV613-066** |
| | ) | |
| vs. | ) | |
| | ) | |
| Homer Bell and Robbie Youngblood | ) | |
| in their individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DAMAGES

COME NOW the Plaintiff, and brings this Complaint, showing to the Court as follows:

### Jurisdiction

1.

This action arises under the authority vested in the Court by virtue of Title 42 of the United States Code, Section 1983, and Title 28 of the United States Code, Sections 1331, 1343(3) and 1367.

Venue

2.

Venue properly lies within this District and Division of the United States District Court where, as here, the operative conduct giving rise to the within described claim occurred herein.

Parties

3.

Plaintiff Robert Timothy Clements was married to Kimberly Nicole Jenkins Clements [hereinafter "Clements" or "Ms. Clements"] at the time of her death. Robert Timothy Clements is an adult citizen of the United States. Ryan Lucas Clements and Breanna Rain Clements, are the minor children of Kimberly Clements and Robert Clements.

4.

Homer Bell [hereinafter, "Bell"] was at all times pertinent hereto the duly elected Sheriff of Candler County, Georgia. As Sheriff of Candler County, Bell is responsible for overseeing the operations of the Candler County Jail and for implementing, enforcing and following the policies and procedures in effect at the Jail. Bell acted under the color of state law during all times pertinent to this complaint.

2

5.

Robbie Youngblood [hereinafter "Youngblood"] was at all times relevant to this Complaint employed at the Candler County Sheriff's Department as a certified jailer and was to follow the policies and procedures established by Defendant Bell. Youngblood acted under the color of state law during all times pertinent to this complaint.

## Factual Allegations

5.

Kimberly Clements was arrested in the late evening, early morning hours of July 21 and July 22, 2011 on charges of theft by taking and criminal damage to property.

6.

Following her arrest, Ms. Clements was transported to the Candler County Jail.

7.

While at the jail, Ms. Clements told another inmate, Jonathan Allingham something to the effect of "if she didn't get out the next day, she was going to kill herself." Ms. Clements made this statement to Allingham two, maybe three times.

8.

Several other inmates overheard Ms. Clements' suicide threat.

3

9.

Ms. Clements was on probation at the time of her arrest. Her probation officer was Lisa Newham ("Newham"). Newham learned of Clements' arrest some time around 10:00 a.m. on July 22, 2011. Newham faxed a "hold" on Ms. Clements to the jail after she learned of Clements' arrest.

10.

Newham arrived the jail around 10:20 a.m. Newham located and spoke with Ms. Clements, who was inside a holding cell.

11.

Around 10:45 a.m., Newham again spoke with Clements as Newham prepared to leave the jail. Clements told Newham something to the effect of "if I have to stay here, I am going to kill myself." The seriousness with which Clements reported this threat to Newham caused Newham to become concerned for the welfare of Clements.

12.

Newham went to the office in which Bell was located. Newham informed Bell that Clements had threatened to kill herself.

13.

Two employees of Bell, Robbie Youngblood and Aimee Garity, were present inside Bell's office when Newham reported Clements' threat of self-harm

4

to Bell. They heard Newham's notice to Bell that Clements had threatened to kill herself.

14.

Neither Youngblood nor Garity did anything to respond to Clements' threat of self-harm.

15.

After being told that Clements was threatening to kill herself, Bell replied "let the bitch kill herself."

16.

Bell acknowledged making this remark when he was interviewed by an investigator from the Georgia Bureau of Investigation following Clements' suicide death. A true and correct copy of a GBI investigative summary reflecting Bell's "bitch" remark is attached hereto.

17.

The policies and procedures in effect at the Candler County Jail as of July 21, 2011 required that inmates who pose a threat of self-harm be placed in isolation and that a jail officer conduct in-person direct supervision of said inmate at irregularly scheduled intervals of at least every fifteen (15) minutes.

18.

The policies and procedures in effect at the Candler County Jail as of July

21, 2011 required that a permanent log be maintained by jail officials for each inmate who is placed in administrative separation or isolation.

19.

The policies and procedures in effect at the Candler County Jail as of July 21, 20111 required that inmates who pose a threat of self-harm wear a suicide smock and that said inmates be prohibited from accessing any items which can be used to commit suicide, like blankets, towels, and a shower curtain bar.

20.

Bell ignored Ms. Clements' threat of self-harm:

a. Bell did not order that a suicide watch be conducted for Clements.

b. He did not order that Clements be placed in a suicide smock.

c. He did not order that all items which might have posed or increased the danger of self-harm to Clements be taken away from Clements.

d. He did not order that Clements be placed in an isolation cell.

e. He did not consult with any of his jail staff or any other professionals, including medical professionals, to determine how he should respond to Ms. Clements' suicide threat.

f. He did not tell anyone else at the jail that Clements had threatened to kill herself.

21.

6

Youngblood ignored Ms. Clements' threat of self-harm:

a. She did not conduct any in-person surveillance of Clements.

b. She did not place Clements in a suicide smock.

c. She did not place Clements in an isolation cell.

d. She did not remove from Clements those items which might have posed or increased the threat of self-harm to Clements.

e. She did not consult with any jail staff or any other professionals, including medical professionals, to determine how to respond to Ms. Clements' suicide threat.

f. She did not tell anyone else at the jail that Clements had threatened to kill herself nor take any other action to safeguard Clements.

22.

Ms. Clements was discovered dead in the holding cell some time around 3:00 p.m. on July 22, 2011. Ms. Clements had hung herself on a shower curtain rod inside the holding cell.

23.

Michael White and Ronnie Johnson were the first ones in the jail who discovered Ms. Clements' body hanging inside the holding cell. White and Johnson were inmate trustees.

7

24.

Up until the time of this discovery, the only window that allowed individuals to view inside the holding cell had been covered by a white curtain or sheet. The holding cell in which Clements killed herself was located directly across from and adjacent to the booking counter of the jail.

25.

Johnson, and a jailer, Patricia Cox, went inside Clements' cell, removed the ligature, and placed her on the ground. Clements showed no signs of life, and her body had lost color indicating that Clements had been dead for some time.

26.

Clements was pronounced dead at 4:20 p.m. on July 22, 2011.

27.

An autopsy conducted by the GBI on Clements concluded that Clements committed suicide by hanging.

28.

Clements succeeded in hanging herself because Bell and Youngblood failed to follow the policies and procedures of the Jail which called for suicidal prisoners such as Clements to be provided with a suicide smock and which called for the removal of items which could be used to commit suicide.

8

29.

Clements died because Bell and Youngblood failed to follow the policies and procedures of the Jail; they did not order that any direct in-person surveillance be conducted of Clements or conduct such surveillance on their own.

30.

Clements was not discovered dead until long after she hung herself as indicated by the discoloration of Clements' body. This delay in discovering Clements' hanging body would not have occurred had Bell and Youngblood ordered/performed 15 minute checks on Clements once they learned that Clements threatened to kill herself.

31.

As Sheriff of Candler County, Bell has knowledge of the Jail's policies and procedures regarding suicidal inmates. In fact, Sheriff Bell personally participated in drafting and revising these policies.

32.

Bell disregarded the general instructions given to his deputies as part of their training that all suicide threats should be taken seriously by detention staff. This disregard constituted negligence and, under the facts of this case, deliberate indifference.

9

33.

Bell failed to take any particularized steps in relation to the jailing of Clements which were directed at preventing Clements' suicide even though Bell knew that Clements had threatened to commit suicide and that Clements' probation officer considered these threats serious enough to report them directly to Bell.  Bell instead belittled the threat of suicide made by Clements and called Clements a "bitch."  Such conduct constituted deliberate indifference on the part of Bell.

34.

Youngblood disregarded the general instructions given to her as part of her training that all suicide threats should be taken seriously by detention staff, and failed to act in compliance with the policies and procedures of the Sheriff's Department as they relate to the risk of suicide.  This disregard constituted negligence and, under the facts of this case, deliberate indifference.

35.

Youngblood failed to take any particularized steps in relation to the jailing of Clements which were directed at preventing Clements' suicide even though Youngblood knew that Clements had threatened to commit suicide and that Clements' probation officer considered these threats serious enough to report them directly to Bell.

36.

Suicide on the part of persons placed into a jail by law enforcement officers is a known risk of harm to inmates.

37.

Bell and Youngblood had a ministerial duty to order or otherwise take steps that would provide for Clements being placed in an isolation cell where she would not have access to any items which posed or increased the threat of self-harm to Clements, like towels, blankets and a shower curtain bar.

38.

They failed to do so.

39.

Bell and Youngblood had a ministerial duty to perform 15-minute checks on Clements and/or to order other jailers to conduct these checks on Clements.

40.

They failed to do so.

41.

Bell and Youngblood had a ministerial duty to order that Clements be placed in a suicide smock, or to place Clements in a suicide smock on their own.

42.

They failed to do so.

11

43.

The failure by Bell and Youngblood to perform their ministerial duties resulted in the death of Ms. Clements.

44.

The failure by Bell and Youngblood to take any steps to safeguard Ms. Clements in the face of the known risk of harm to her resulted in the death of Ms. Clements.

45.

At and before the time of Clements' death, the federal law was clearly established that an individual in custody is protected by operation of the Eighth Amendment and/or the Fourteenth Amendment of the United States Constitution from deliberate indifference to known serious medical needs and that the risk of suicide, when known or reasonably known to the persons entrusted with the responsibility of custody, is such a serious medical need. "A prison that deprives prisoners of basic sustenance, including adequate medical care, is incompatible with the concepts of human dignity and has no place in civilized society." *Brown v. Plata*, 563 U.S. ___, 131 S. Ct. 1910, 1928 (2011).

46.

At or before the time of Clements' death, Bell and Youngblood had fair warning that completely disregarding an inmate's threat of self-harm, comparing

12

this threat to nothing more than a generalized grievance, calling the inmate who threatened to kill herself a "bitch", and taking no action to protect this inmate from the threat of self-harm violated the Eighth and Fourteenth Amendments of the Constitution.

47.

Bell and Youngblood had reason to know that Clements represented a suicide risk.

48.

But for the conduct and deliberate indifference of Bell and Youngblood, Clements would not have committed suicide in the Candler County jail.

Causes of Action

49.

Bell and Youngblood breached the duty arising by operation of the Eighth and Fourteenth Amendments of the United States Constitution by being deliberately indifferent in the course of failing to protect Clements from the known risk of suicide/self inflicted harm.

50.

The actions and inactions of Bell and Youngblood violated Clements affirmative rights as guaranteed by Georgia law to the protection against abuse while in custody, and the receipt of medical care.

13

51.

The actions and inactions of Bell and Youngblood constituted a breach of

their ministerial duties and subject Bell and Youngblood to liability in their

individual capacities for the injury resulting therefrom.

Damages

52.

The actions of Bell and Youngblood proximately caused the loss of Ms.

Clements' life.

53.

Bell acted with a reckless and callous indifference to the federally protected

rights of Kimberly Clements and is therefore liable for punitive damages so that

Bell is punished for his conduct and deterred from engaging in similar conduct.

Prayer for Relief

On the basis of the foregoing, the Plaintiff respectfully demands a Jury Trial,

and that this Court award the following relief from the Defendants:

a. Damages against Bell and Youngblood in an amount appropriate to

compensate for the full value of the life of Clements, without deduction for the

necessities of life or funeral expenses;

b. Punitive damages against Defendant Bell;

b. Whatever other damages or costs are recoverable under federal law,

14

including attorneys' fees and costs of litigation; and

     c. Such other and further relief as to this Court is deemed just and proper.

     PLAINTIFF DEMANDS TRIAL BY JURY.


                 S/ G. BRIAN SPEARS
                 G. Brian Spears, #670112
                 Attorney for Plaintiff

1126 Ponce de Leon Avenue
Atlanta, Georgia 30306
404-872-7086 [voice]
404-892-1128 [facsimile]
bspears@mindspring.com

                 S/ ALBERT WAN
                 Albert Wan, #334224
                 Attorney for Plaintiff

1201 Peachtree Street
400 Colony Square, Suite 200
Atlanta, Georgia 30361
404-872-7760 [voice]
404-872-7764 [facsimile]
albert@albertwanlaw.com

                 S/ WILSON SMITH
                 Wilson Smith, #665025
                 Attorney for Plaintiff

Smith and Jenkins, P.C.
P.O. Box 529
Vidalia, Georgia 30475-0529
912-537-4330 [voice]
912-537-4331 [facsimile]
wrsmith@smithandjenkins.com